U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

SEP - 9 2010

CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

MELANIA KATE SWEENEY,           §
    PLAINTIFF,                §
                    §
VS.                             §    CIVIL ACTION NO. 4:09-CV-157-A
                    §
MICHAEL J. ASTRUE,              §
COMMISSIONER OF SOCIAL SECURITY, §
    DEFENDANT.                §

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of

the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

I. STATEMENT OF THE CASE

The plaintiff, Melania Kate Sweeney ("Sweeney"), filed an application for supplemental

social security income ("SSI") payments on December 15, 2005, alleging a disability onset date of

December 1, 2001. (Transcript ("Tr.") 17, 71-73.) That application was denied initially and on

reconsideration. (Tr. 58-70.) Sweeney timely requested a hearing before an administrative law judge

("ALJ"), and a hearing was held before ALJ Adolfo J. Vila on December 11, 2007. (Tr. 17-26, 444-

67.)

Sweeney claimed disability due to a number of impairments including bipolar disorder, attention deficit hyperactivity disorder ("ADHD"), and headaches. (Tr. 77, 452.) On February 21, 2008, the ALJ issued a decision finding that Sweeney was not disabled. (Tr. 17-26.) The Appeals Council denied Sweeney's request for review on December 11, 2009. (Tr. 5-7.) Sweeney subsequently filed the instant action in federal court on March 11, 2009. (doc. #1.)

## II. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant

from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198; *see also Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). If the Commissioner meets this burden, the claimant must then prove that he cannot, in fact, perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A denial of benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). The Court must, however, carefully scrutinize the record to determine if the evidence is present.

## III. ISSUES

Whether the ALJ applied the correct legal standard in determining that Sweeney was not disabled, and whether his determination is supported by substantial evidence.

## IV. ADMINISTRATIVE RECORD

### A.    Background and Vocational History

Sweeney was born on September 19, 1987. (Tr. 25, 445.) She completed the tenth grade, received her GED, and has no past relevant work experience. (*Id.*)

### B.    Relevant Treatment History

Sweeney's medical records establish that she has a history of treatment for ADHD, migraine headaches, and bipolar disorder. (*See, e.g.*, Tr. 19-24, 348, 452 .) There are also two documented episodes of suicide attempts in the record. (Tr. 455-56.) Psychiatrist Ray Scardina, M.D. ("Scardina"), has treated Sweeney for depression, bipolar disorder and ADHD since she was 13 years old. (*See, e.g.*, Tr. 126, 181-83, 347-63, 430-32, 445.)

Sweeney's primary care physician, Tod Hedridge ("Hedridge"), treated Sweeney numerous times for migraine headache pain. He saw Sweeney in December 2005 for complaints of migraines and nausea and prescribed her medications. (Tr. 148-49.) Hedridge changed her medications because of lack of improvement and/or worsening of her headache and nausea symptoms on numerous occasions including December 2005, and February, March, April, July and August 2006. (Tr. 414-419.) In August 2006, Sweeney reported that her headaches remained persistent, and that she was experiencing vomiting and bilateral leg cramping and jerking, and she was given a Droperidol injection. (Tr. 401-02.) Records also reveal that in May and August 2007 Sweeney reported that the medications she was taking were not helping her headaches and she reported daily

headaches, vomiting and nausea. (Tr. 380, 387.) Heldridge's assessment in May 2007 notes that her migraine headaches were a chronic condition. (Tr. 387.)

Sweeney was evaluated at North Texas Independent Medical Examiners by Gerald H. Stephenson, Ph.D. ("Stephenson") on September 27, 2007. (Tr. 329.) Stephenson diagnosed her with bipolar disorder, a history of alcohol and polysubstance abuse/dependence currently in remission, borderline personality traits, stress factors, and assessed a Global Assessment of Functioning ("GAF") of 60.[1] (Tr. 334.) He noted that Sweeney's prognosis was fair with continued treatment and sobriety and commented that she was vulnerable to both psychological and chemical relapse. (Tr. 335.) He also assessed a range of limitations, including: (1) slight limitations in her ability to understand, remember and carry out short, simple instructions, (2) marked limitations in her ability to understand, remember and carry out detailed instruction and in her ability to make judgments on simple work-related decisions, and (3) moderate limitations in her ability to interact appropriately with the public, supervisors or co-workers and in her ability to respond appropriately to work pressures and changes in a routine work setting. (Tr. 336-37.)

C.     Administrative Hearing

At her hearing before the ALJ, Sweeney was represented by an attorney. (Tr. 442-67.) She testified on her own behalf, and a vocational expert ("VE"), Karyl Kuuttila, testified via telephone. (Tr. 444.) Sweeney testified that she was 20 years old, that she attended high school through the 10th

_____

[1] GAF is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning." American Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders at 32 (4th ed. 1994)(DSM-IV). A GAF of 60 reflects "moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR any moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers)." Id. at 34.

grade, and that she had obtained her GED. (Tr. 445.) She testified that she had never worked full-time. (*Id.*) She told the ALJ that she had been under the care of Heldridge, her primary care physician, for three or four years, and that she saw him at least once a month when she got sick, such as with headaches or flu symptoms. (*Id.*)

Sweeney testified that she had been seeing her psychiatrist, Scardina, since she was 13 for treatment of "bipolar and manic, depressed, depression disorder." (*Id.*) She said that she had abused alcohol and illegal drugs, including methamphetamine, marijuana, ecstasy and cocaine in the past. (Tr. 446-47.) Sweeney testified that she had stopped using those substances about two months after she got out of "rehab" in 2005. (Tr. 447.) Sweeney told the ALJ that she lived with her grandparents, that her mother had died, and that she no longer spoke with her dad. (*Id.*) She said she did not have any friends in Dallas, and that all of her friends were in the Tyler area where she was from. (*Id.*) She also said she had two boyfriends in the past, but she was no longer seeing anyone. (*Id.*)

Sweeney testified that she did not do anything during the day other than watch television and go on the internet. (Tr. 449-50.) She said she had looked for jobs in the past, but that something had always come up, such as her mother's death and then her depression. (Tr. 450.) She told the ALJ that she had a history of violence and that her father had a history of being violent with her. (Tr. 451.) She said she could not work because of her temper, her inability to pay attention, and her ADHD, which caused her to forget things easily. (*Id.*) Sweeney listed a number of medications she was taking, including Seroquil, Effexor, Klonopin, Flurazepam and Hydrocodone. (Tr. 451.) She said that she took the hydrocodone for headaches, which she often suffered when she was stressed.

(Tr. 452.)  She reported being stressed often because she had regrets and became sad easily.  (Tr. 452.)  Sweeney said that she sometimes got a "hangover" from the Seroquel.  (Tr. 452-53.)

Sweeney said she had been living with her grandparents for about three years. (Tr. 454.) She said that she did not expect to be off work for the rest of her life, and that she wanted to get a job and go to school to be a designer when she could "finally get [her] mood stabilized." (Tr. 455.) She described several past suicide attempts. (Tr. 455-56.) Sweeney also testified regarding a family history of psychological difficulties involving her mother and her grandmother, and that her mother had committed suicide. (Tr. 458.) She said that she did not exercise, but she also said that she had no physical limitations. (Tr. 458-59.)

The VE testified next. (Tr. 460-61.) The ALJ asked her to assume a hypothetical individual of Sweeney's age, education, and work history. (Tr. 460.) He asked her to further assume that the hypothetical individual was moderately limited in the following ways: ability to interact appropriately with the public, with supervisors, and with coworkers, and ability to respond appropriately to work pressures in a usual work setting and to changes in a routine work setting. (*Id.*) He said that she would be markedly limited in her ability to understand, remember and carry out detailed instructions and in her ability to make judgments on simple work-related decisions. (Tr. 461.) Finally, he said the individual would be slightly limited in her ability to remember short, simple instructions and to carry them out. (*Id.*)

He then asked if there were any jobs in the national economy that such an individual could perform. (*Id.*) The VE testified that there would be a number of jobs performing simple, unskilled,

repetitive work that such an individual could perform, but that the occupational base would be eroded down to about 2,840 different jobs, sedentary through heavy work. (Tr. 462-63.)

D.    The ALJ's Decision

In entering his decision, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 17-26); 20 C.F.R. § 416.920(a)(4). At step one, the ALJ found that Sweeney had not engaged in substantial gainful activity since her alleged onset date. (Tr. 19.) At step two, the ALJ determined that Sweeney's bipolar disorder was a severe impairment. (Tr. 19, citing 20 C.F.R. § 416.920(c), *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 985) and *Estran v. Heckler*, 745 F.2d 340 (5th Cir. 1984).) The ALJ did not address any other of Sweeney's alleged impairments, but continued to step three and found that Sweeney did not have an impairment or combination of impairments that met or equaled a listing at step three of the disability analysis. (Tr. 19-24, citing 20 C.F.R. §§ 416.920(d), 416.925 and 416.926.)

The ALJ next analyzed Sweeney's medical history and found that her subjective complaints were not credible to the extent she alleged. (Tr. 20-25.) He then formulated a residual functional capacity ("RFC") for Sweeney as follows:

> [Sweeney] has the residual functioning capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: due to the claimant's mental impairment, including neurovegetative symptoms of that impairment, the claimant has moderate limitations, but can still function satisfactorily, in her ability to interact appropriately with the public, supervisors, and co-workers; respond appropriately to work pressures in a usual work setting; and respond to changes in a routine work setting. The claimant has serious limitations, and her functioning is severely limited but not precluded, for her ability to understand, remember, and carry out detailed job instructions; and make judgments on simple work-related decisions. The claimant has mild limitations, but ordinarily functions well, in her ability to understand, remember, and carry out short simple instructions.

(Tr. 24.) The ALJ noted that the RFC conclusions reached by the State Agency physicians also supported a finding of "not disabled." (Tr. 25.)

At step four, the ALJ found that Sweeney had no past relevant work. (Tr. 25.) Then, at step five, the ALJ considered Gordon's RFC and relevant vocational characteristics, and determined that there were jobs that existed in significant numbers in the national economy that Sweeney could perform. (Tr. 26, citing 20 C.F.R. §§ 416.960(c) and 416.966.) Ultimately, the ALJ concluded that Sweeney was not disabled within the meaning of the Act at any time from the date the application was filed on December 15, 2005 through the date of his decision. (Tr. at 26.)

## V. DISCUSSION

Sweeney raises two main issues on appeal: (1) whether the ALJ applied the correct legal standards in determining that she was not disabled and (2) whether the ALJ's decision that Sweeney was not disabled is supported by substantial evidence. (*See* Plaintiff's Brief ("Pl. Br.") at 2.) Because the Court finds that the Commissioner failed to apply the correct legal standards, it will not reach the issue of whether there is substantial evidence to support his opinion.

The Court will first address Sweeney's argument that the ALJ failed to apply the appropriate standard for determining whether her ADHD and headaches were severe impairments at step two of the evaluative process. (Pl. Br. at 9-12.) In his analysis of the severity of Sweeney's bipolar disorder at step two, the ALJ cited to the Fifth Circuit's decision in *Stone*. (Tr. 19.) He did not, however, mention Sweeney's alleged impairments of migraine headaches or ADHD at step two.

The Commissioner has issued regulations that define a severe impairment as one which significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§

404.1520(c), 416.920(c). *See also* 20 C.F.R. §§ 404.1521(a), 416.921(a). The Fifth Circuit, however, has found that a literal application of that definition is inconsistent with the statutory language and legislative history of the Social Security Act. *Stone*, 752 F.2d at 1104-05. Instead, the Fifth Circuit has established the following standard for determining whether a claimant's impairment is severe: An impairment is not severe only if it is "a slight abnormality having *such minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101 (emphasis added). The *Stone* severity standard does not allow for *any* interference with work ability. *Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805 (N.D. Tex. 2009) ("*Stone* provides no allowance for a minimal interference on a claimant's ability to work."). An ALJ's failure to apply the *Stone* standard is a legal error, not a procedural error and the claim must be remanded to the Secretary for reconsideration unless the correct standard is used. *Stone*, 752 F.2d at 1106.

In this case, although the ALJ referred to *Stone* by name in analyzing Sweeney's bipolar disorder, it is not clear that he applied the appropriate standard in analyzing her migraine headaches or her ADHD. In fact, it is not clear that he gave any consideration whatsoever to her headaches or ADHD at step two. He failed to make any conclusions regarding the severity of those two impairments or to discuss the effects that those two impairments have on her ability to work. *Stone*, 752 F.2d at 1101. Thus, he applied an incorrect standard of severity at step two. *See, e.g., Weston v. Astrue*, 2010 WL 2293273 (N.D. Tex. May 4, 2010) (Ramirez, J.).

The failure of the ALJ to apply the correct standard to the severity requirement as set forth in *Stone* and his failure to apply *Stone*'s construction of 20 C.F.R. § 404.1520(c) is a legal error, and

it requires that this case be remanded for reconsideration. *Stone*, 752 F.2d 1099. Determinations of non-disability "must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). The ALJ in this case failed to make a reviewable *Stone* analysis of Sweeney's migraine headaches or of her ADHD mental impairment. There is ample medical evidence that Plaintiff suffered from migraine headaches and ADHD. (*See, e.g.*, 126, 148-49, 181-83, 347-63, 380, 387, 401-02, 414-19, 430-32, 445.) Given the low bar for the establishment of a severe impairment under *Stone*, remand is appropriate to allow the Commissioner to clarify that the *Stone* opinion was followed and to revisit whether any other of Sweeney's impairments should have been included among her severe impairments at step two of the ALJ's analysis.

The Commissioner contends that a remand for an error at step two is inappropriate in the instant case because Sweeney has failed to demonstrate that she was prejudiced from the error. (Def. Br. at 11-12.) "*Stone* mandates, however, that "[u]nless the correct standard is used, the claim *must* be remanded...for reconsideration...ambiguities regarding whether the correct standard was used must be resolved at the administrative level." *Charlton v. Astrue*, 2010 WL 3385002, *7 (N.D. Tex. July 14, 2010) (Ramirez, J.); *Stone*, 752 F.2d at 1106 (emphasis added) (citation omitted). Because the Court has determined that remand is required to correct the Commissioner's legal error at step two, it does not reach Sweeney's other issues for review.

## RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's decision should be REVERSED and that the case be REMANDED for further proceedings.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED
## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file, within fourteen (14) days after the party has been served with a copy of this document, specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation. The court is hereby extending the deadline until **September 30, 2010**, within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **September 30, 2010** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

**SO ORDERED.**
**September 9, 2010**

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE